THOMAS A. JOHNSON, #119203
DANIEL L. OLSEN, #261645
Johnson, Greene & Roberts LLP
400 Capitol Mall, Suite 1620
Sacramento, California 95814

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ALPHONSO HARRIS,<br><br>Defendant. | Case No.: 2:16-cr-00011-2-JAM<br><br>DEFENDANT'S OBJECTIONS TO THE PSR<br><br>Date: March 28, 2017<br>Time: 9:15 a.m.<br>Judge: John A. Mendez |

## I – INTRODUCTION

The Pre-Sentence Report ("PSR") recommended a sentence of 47 months based upon a Total Offense Level of 25 and a Criminal History Category I. Pursuant to Federal Rules of Criminal Procedure, Rule 32(f), the defense hereby submits the following objections to the Pre-Sentence Report Defendant and Sentencing Memorandum:

## II –OBJECTIONS TO PSR

**A.**     **The Base Offense Level Should be Twelve (12) Based on Requested Amendments to the Offense Summary.**

The written plea agreement and its factual basis discuss the sale of approximately sixteen (16) guns and makes no mention of the sale of silencers or guns with obliterated serial numbers. Anything beyond that number of guns and to add an enhancement for the sale of silencers or guns with obliterated serial numbers may only be factored in if it is

legally considered relevant conduct. The PSR references the sale of forty (40) guns along with numerous silencers and guns with obliterated serial numbers.

Prior to that determination, however, it is to be set forth that the "party" seeking to enhance a sentence above a base offense level bears the burden of persuasion, with real evidence. United States v. Snipe, 515 F.3d 947 (9th Cir 2008); United States v. Howard, 849 F.2d 1045 (9th Cir. 1990); United States v. Joetzki, 952 F.2d 1090 (9th Cir. 1991). When a defendant raises objections to the PSR, the district court is obligated to resolve the factual dispute, Fed. R. Crim. P. 32(i)(3)(B), and the Government bears the burden of proof to establish the factual predicate for the court's base offense level determination. In other words, when a defendant objects to a PSR's factual findings, the court may not simply rely on the factual statements in the PSR to find that the government has carried its burden. Snipe at 955.

As well, the Ninth Circuit's established rule, requiring facts found in support of Guideline enhancements that turn out to have a disproportionate impact on the ultimate sentence imposed to be established by the Government by clear and convincing evidence, continues to govern sentencing decisions. United States v. Staten, 466 F.3d 708, 720 (9th Cir. 2006).

With that in mind we request the following changes to the offense conduct:

a)    OFFENSE CONDUCT PARAGRAPH 11. I object to the inclusion of this paragraph and ask that it be omitted. There is no evidence that Mr. Harris was involved in this sale. It took place without Mr. Harris present and happened at a location that Mr. Harris did not know existed at the time.  Since he was not part of the set-up for the deal it was not reasonably foreseeable that Mr. Javed would be involved in this conduct.

b)    OFFENSE CONDUCT PARAGRAPH 13. I object to this paragraph as written and ask that it be amended to include that Javed and the Special Agent went into a separate room to conduct the negotiation and sale, that Mr. Harris was not present during the sale, the money was given to Mr. Javed, and there is no evidence that Mr. Harris knew the quantity or type of weapons being sold.

c)     OFFENSE CONDUCT PARAGRAPH 14. I object to this paragraph as written and ask that it be amended to include that Mr. Harris appears to be outside the office where the sale is taking place, that Mr. Harris was not part of the negotiation for the sale of the weapons, did not receive money from the sale, and there is no evidence to show whether Mr. Harris knew of the quantity or type of weapons being sold.

d)     OFFENSE CONDUCT PARAGRAPH 15. I object to this paragraph as written and ask that it be amended to include that the Special Agent negotiated for the sale of handguns and a silencer with Mr. Javed and that it appears Mr. Harris did not know what guns were being sold, how many, nor about silencers nor obliterated serial numbers.

e)     OFFENSE CONDUCT PARAGRAPH 16. I object to this paragraph as written and ask that it be amended to include that the Special Agent negotiated for the sale of guns and a silencer with Mr. Javed and that it appears Mr. Harris did not know what guns were being sold, how many, nor about silencers nor obliterated serial numbers.

f)     OFFENSE CONDUCT PARAGRAPH 17. I object to this paragraph as written and ask that it be amended to include that the Special Agent negotiated for the sale of guns with Mr. Javed and that it appears Mr. Harris did not know what guns were being sold, how many, nor about obliterated serial numbers.

"Acts are part of the common scheme or plan if they are 'substantially connected to [the offense] by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.' " Id. (quoting U.S.S.G. § 1B1.3, cmt. n. 9(a).) See also United States v. Fine, 975 F.2d 596, 600 (9th Cir. 1992) (stating that the "relevant conduct provisions ... taken together with the fraud and grouping provisions, mean that conduct which was part of the scheme is counted [when calculating a defendant's sentence], even though the defendant was not convicted of crimes based upon the related conduct").

I believe the enhancement to level eighteen (18) under 26 U.S.C. Section 5845(a) comes from the dealing of silencers. While Mr. Harris was present during the January 9,

2015 sale of a silencer, there is no evidence that Mr. Harris was aware before the sale that a silencer would be purchased. There is also no evidence that Mr. Harris was involved in negotiating the terms of the sale or that he received any money for the transaction.

The additional times that a silencer was sold, Mr. Harris does not appear to even be in the same room as the sales since his job seems to have been to stand outside the office and make sure no one else went into the room while Mr. Javed and the Special Agent conducted business. Therefore, Mr. Harris couldn't have known what was being sold which makes the sale of silencers an act that was not reasonably foreseeable to Mr. Harris under Section 1B1.3(a).

Therefore, the base level should be twelve (12) and not eighteen (18).

**B.**    <u>**The Enhancement for the Number of Firearms should be +4, Not +6**</u>

the total number of guns attributed to Mr. Harris is sixteen (16), which equates to a four (4) level enhancement under 2K2.1 (b)(1)(B). Using relevant conduct under Section 1B1.3(a) probation has calculated the number of guns to fall into the higher enhancement under 2K2.1(b)(1)(C) for a six (6) level enhancement. We disagree with probation's finding that the additional guns sold is relevant conduct.

In the sales that fall outside of the factual basis in the plea agreement, Mr. Harris does not appear to have set up the sale, does not take part in negotiating any of the terms of the sales, does not receive cash during the sales, does not appear to have knowledge of the quantity of guns being sold, and does not appear to have knowledge of the type of guns being sold. Therefore, Paragraph 30 should be amended to reflect an enhancement of four (4) levels be added instead of six (6) levels.

**C.**    <u>**A Two (2) level Decrease Should be Awarded for Being a Minor Participant Pursuant to Section 3B1.2(b).**</u>

A minor participant applies to a defendant who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

Section 3B1.2(C) lists several factors to consider and I believe many are relevant to Mr. Harris, particularly 3B1.2(C)(iii)-(v).

> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
> (v) the degree to which the defendant stood to benefit from the criminal activity.

Section (C) then goes on to give as an example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under the guideline. It further goes on to state that the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.

In the present case, while Mr. Harris communicated directly with the Special Agent, he was not part of negotiating prices or in determining what weapons were to be purchased. It appears from the police reports that Mr. Harris would typically great the Special Agent and then the Special Agent and Mr. Javed would go into an office where the Special Agent would inform Mr. Javed of how much money he had and Mr. Javed would then show what guns he could buy for that amount of money. While this was happening, in most sales, Mr. Harris would be outside watching the door to make sure no one came into the office. At the end of the transaction, the Special Agent would give the money to Mr. Javed. At no point did Mr. Harris have a proprietary interest in the business. He also was not the decision maker and was not able to negotiate prices or quantities.

In the following cases, the Courts upheld a reduction for a participant who was more involved in the criminal activity than Mr. Harris.

In *United States v. DeMasi*, 40 F.3d 1306 (1st Cir. 1994). The district court did not err in determining that the defendant's participation in an attempted robbery fell between a minor and a minimal role, thus warranting a three-level reduction in base offense level. The government had challenged the reduction, arguing that the district court impermissibly based this determination on the fact that the defendant's role as a lookout was less reprehensible than the roles of his codefendants, and not because he was less culpable. The circuit court rejected this argument, concluding that the record established the defendant was both less culpable than most of his codefendants and less culpable than the "average person" who commits the same offense. See §3B1.2, comment. (nn.1-3).

In *United States v. Santos*, 357 F.3d 136 (1st Cir. 2004). The defendant pled guilty to conspiring and attempting to possess in excess of five kilograms of cocaine, and the sentencing court–which expressly found that there was a sound factual basis for the plea– was entitled to accept that concession at face value and to draw reasonable inferences from it. The sentencing court carefully appraised the defendant's involvement, considering his presence during a discussion with co-conspirators, the size of the down payment, and the amount of cocaine displayed on the table when the defendant first entered the garage for a scheduled pick up of the drug quantity. The appellate court determined that he properly should be classified as a minor, not a minimal, participant and affirmed the district court's conclusion

Therefore, we request that Paragraph 33 be amended to show a minus two (-2) level reduction for being a minor participant.

**D.** **Mr. Harris Should be Eligible For Probation**

The PSR has a sentencing range that falls within Zone D of the Sentencing Table, thus making Mr. Harris ineligible, per the guidelines, for probation pursuant to USSG Section 5B1.1, comment. (n.2). However, with the objections noted above, the new

sentencing guideline number of eleven (11), would fall within Zone B of the Sentencing Table and make Mr. Harris eligible for probation.

**E.**     **Characteristics of Defendant and Circumstances of This Case, Factor in 18 USC § 3553(a)**

When considering the factors under 18 U.S.C. § 3553(a), the Court looks at the nature and circumstances of the case. According to statistics and findings by the Sentencing Commission, Mr. Harris' age (57 years old) at the time of sentencing is a significant mitigating factor when considering specific deterrence. *See* U.S. Sentencing Comm'n, <u>Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines,</u> at 12 (2004). The chance that a man of his age (especially with no criminal history) will reoffend is low.

Mr. Harris has no criminal convictions of any kind before this case. This is a significant mitigating factor because of the documented relationship between lack of any criminal history and the absence of recidivism. *See* <u>United States v. Autery,</u> 555 F.3d 864 (9th Cir. 2009) (recognizing that a complete lack of criminal history is a mitigating factor that may justify a *Booker* variance, because it demonstrates a low likelihood of recidivism); U.S. Sentencing Comm., Recidivism and the "First Offender," May 2004, http://www.ussc.gov/research/research-publications/recidivism-and-first-offender).

On August 12, 2013, the former Attorney General announced new reforms geared to reduce the prison population. Among the populations that will be reduced under former Attorney General Holder's new policies are elderly and infirm prisoners who pose no danger and have served a significant part of their sentence, and low level drug offenders. Non-dangerous offenders like Mr. Harris should also not be sent into the prison system for lengthy sentences. The nation's federal prisons are filled over capacity. Federal prisons are operating at nearly 40 percent above capacity and hold more than 219,000 inmates -- with almost half of them serving time for drug-related crimes and many of them with substance use disorders. *See*

http://www.foxnews.com/politics/2013/08/12/holder-to-call-for-changes-in-drug-sentencing-guidelines/.

The Human Rights Watch completed a report regarding the aging prison population in the United States. Elder prisoners are costly to care for, yet research indicates that many of these older inmates represent a relatively low risk of reoffending and show high rates of parole success. A recent effort to assess the impact of age on healthcare costs nationally concluded that the average annual cost per prisoner was $5,482, but that for prisoners age 55 to 59, the amount was $11,000, and the figure steadily increased with age cohorts, reaching $40,000 for prisoners age 80 or over. *Available at* http://www.hrw.org/sites/default/files/reports/usprisons0112webwcover_0_0.pdf at 75.

The report states, "Accountability for crime is an indispensable component of a just criminal justice system. Extremely serious crimes warrant long prison sentences. Nevertheless, as prisoners grow old and infirm, the justification for continued imprisonment may diminish. Even if ongoing punishment is warranted, the question remains whether the form that punishment takes should change to reflect age and infirmity." *Id.* at 87.

Mr. Harris is man approaching the age of sixty (60) with no record, who has employable skills, some health problems, and stands convicted of non-violent offenses that are unlikely to be replicated. Additionally, this case involved no victims as all sales were made to an undercover Special Agent. Furthermore, the case lacked complexity. In his letter, Mr. Harris recognizes his mistakes and is remorseful for his actions. He acknowledges the emotional and financial pains he has caused his family. He acknowledges that his gambling led him into this position. Mr. Harris is a candidate for a below-guidelines sentence, to reduce prison over-crowding and return him to the working world sooner rather than later to begin working to rebuild his life. We hope that you consider revising the PSR so that he can have a second chance at living a lawful and productive life.

DATED:  March 14, 2017

Respectfully submitted,


  _/s/Daniel Olsen_____
Daniel Olsen
Attorney for Alphonso Harris